**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

BRENDA TUOHEY, as Personal Representative                          PLAINTIFF
of the Estate of Mildred May Bryant and on behalf of the
wrongful death beneficiaries of Mildred Mae Bryant,
and MALVORN MAY, as Personal Representative
of the Estate of Charles R. Stills and on behalf of the
wrongful death beneficiaries of Charles R. Stills
and all others similarly situated

v.                                          No. 4:15CV00506 JLH

CHENAL HEALTHCARE, LLC, d/b/a CHENAL
REHABILITATION AND HEALTHCARE CENTER, *et al*.          DEFENDANTS

## OPINION AND ORDER

Brenda Tuohey and Malvorn May,[1] individually and on behalf of all residents and estates

of residents who resided at Chenal Rehabilitation and Healthcare Center from July 23, 2010, through

the present, commenced this putative class action against the defendants in the Circuit Court of

Pulaski County on June 23, 2015. The amended complaint contains six counts, alleging that the

Center was chronically understaffed in violation of the Arkansas Deceptive Trade Practices Act,[2]

the admission agreement, and the Center's provider agreements, that the failure to staff the Center

adequately constituted ordinary negligence, that the defendants participated in a conspiracy to

understaff the Center, and that the defendants were unjustly enriched. The defendants[3] have filed

a motion to dismiss all counts other than Count III–ordinary negligence–pursuant to Federal Rule

---

[1]When the Court refers to "Tuohey" in this opinion, it is referring to Tuohey and May.

[2]ARK. CODE ANN. § 4-88-101, *et seq*.

[3]Defendant Diamond Senior Living, LLC has filed a notice to adopt the remaining
defendants' partial motion to dismiss and accompanying briefs. Documents #48, #53, and #56.

of Civil Procedure 12(b)(6).  Document #42.  For the following reasons, the motion to dismiss is granted in part and denied in part.

## I.

The defendants are a web of corporate entities and individual administrators involved in some fashion with the Chenal Rehabilitation and Healthcare Center, which is a nursing home in Little Rock.  The amended complaint alleges that the corporate entities developed the business policies that resulted in the alleged understaffing of the Center, while the individual administrators allegedly acted in conjunction with the corporate entities to reduce staffing levels or maintain staffing at an inadequate level.  Document #35 at 27, ¶ 57.  Tuohey's mother, Mildred Mae Bryant, was a resident of the Center from approximately June 25, 2007 to December 13, 2014.  *Id*. at 2, ¶ 3.  According to the amended complaint, Bryant's stay at the Center accelerated the deterioration of her health, resulting in multiple urinary tract infections, poor hygiene, a broken tibia, a broken fibula, unsanitary living conditions, and ultimately her death.  *Id*. at 37, ¶ 81.  Malvorn May's stepfather, Charles R. Stills, was a resident of the Center from approximately September 2012 until his death on March 5, 2013.  *Id.* at 2, ¶¶ 5-7.  The amended complaint alleges that Stills's stay at the Center accelerated the deterioration of his health, resulting in multiple urinary tract infections, poor hygiene, a broken hip, unsanitary living conditions, and ultimately his death.  *Id*. at 37, ¶ 82.

Residents of the Center are elderly, disabled, and confined to their beds or unable to rise from a bed or chair independently.  *Id*. at 23, ¶ 46.  They rely on staff for skilled nursing care and treatment, as well assistance with basic tasks, such as eating, bathing, dressing, moving from the bed to a wheelchair, and using the toilet.  *Id*.  Certified Nursing Aides are the staff primarily charged with providing this type of assistance.  *Id*. at ¶ 47.  Tuohey alleges that the defendants systemically

2

failed to meet the needs of residents by limiting the budget for CNA staffing and in turn limiting the number of CNA's on duty at the Center.  Document #35 at 23, ¶ 48.  There were not enough CNA's to provide regular hygiene care or re-position immobile residents, which left residents in dirty diapers, clothes, and beds, causing discomfort and sores.  *Id*. at 24, ¶ 51.  There were not enough CNA's to timely respond to call lights activated by residents in need, causing residents to soil themselves or fall while attempting to walk to the bathroom without help.  *Id*.  And there were not enough CNA's to help residents eat at the designated time, contributing to weight loss and dehydration.  *Id*.  According to Tuohey, understaffing saved the defendants millions of dollars.  Document #35 at 25, ¶ 52.  From June 1, 2012 to May 31, 2015, the Arkansas Department of Human Services Office of Long Term Care cited the Center for thirty-five health-related deficiencies, including the failure to provide necessary care and services to maintain the highest well being of each resident.  *Id*. at ¶ 53.

## II.

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Although detailed factual allegations are not required, the complaint must set forth "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).  The court must accept as true all of the factual allegations contained in the complaint, *Twombly*, 550 U.S. at 572, 127 S. Ct. at 1975, and

must draw all reasonable inferences in favor of the nonmoving party. *Gorog v. Best Buy Co., Inc.*, 760 F.3d 787, 792 (8th Cir. 2014).  The complaint must contain more than labels, conclusions, or a formulaic recitation of the elements of a cause of action, which means that the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965.

## A.       The Arkansas Deceptive Trade Practices Act

Count I fails as a matter of law because the ADTPA does not apply to the defendants. Tuohey alleges that the defendants engaged in deceptive trade practices in violation of the ADTPA by knowingly failing to adequately staff the Center.  Document #35 at 38-42, ¶¶ 87-99.  The ADTPA protects Arkansas consumers from a variety of unfair and deceptive practices, but its "safe harbor provision" precludes its application to "[a]ctions or transactions permitted under laws administered by the Insurance Commissioner, the Securities Commissioner, the State Highway Commission, the Bank Commissioner, or other regulatory body or officer acting under statutory authority of this state or the United States, unless a director of these divisions specifically requests the Attorney General to implement the powers of this chapter . . . ."  ARK. CODE ANN. § 4-88-101(3).  Tuohey urges this Court to interpret the safe harbor provision narrowly to only preclude actions against defendants who have complied with applicable laws and regulations.  Document #49 at 5.

But the Arkansas Supreme Court did not make an inquiry into the specific conduct of the defendants in *Arloe Designs v. Arkansas Capital Corp.*, holding that the ADTPA did not apply to a nonprofit, which was subject to the supervision of the Arkansas State Bank and the Arkansas State Board of Finance, and a national bank, which was regulated by the Office of the Comptroller of

Currency and the Federal Deposit Insurance Commission.  2014 Ark. 21, 6, 431 S.W.3d 277, 281.

The court stated:

> Because both [the nonprofit] and [the national bank] are regulated by a regulatory
> body acting under statutory authority of Arkansas or of the United States, their
> actions and transactions are not subject to claims that can be brought under the
> ADTPA unless a specific request has been made to the Attorney General.

*Id*.  The safe-harbor provision precludes actions pursuant to the ADTPA against regulated entities

engaged in regulated conduct.  *See Ford v. Citimortgage, Inc.*, No. 3:15CV00206-DPM, 2015 WL

7429990 at *2 (E.D. Ark. Nov. 20, 2015) (holding "[n]o private right of action exists against

CitiMortgage, a regulated entity, in the absence of the Attorney General declining to proceed.");

*Gabriele v. Conagra Foods, Inc.*, No. 5:14CV05183-TLB, 2015 WL 3904386 at *7 (W.D. Ark.

June 25, 2015 (holding "[c]onsistent with the plain language of the ADTPA, it appears that the

Arkansas Supreme Court recognizes and applies the so-called general-activity rule.  In other words,

the safe-harbor provision exempts regulated conduct by regulated actors regardless of whether

substantive state law explicitly authorizes or prohibits the precise conduct at issue.").  As this Court

explained in *RM Dean Farms v. Helena Chem. Co.*,

> No regulatory body permits deceptive and unconscionable trade practices such as
> those prohibited by the Arkansas Deceptive Trade Practices Act.  Because no
> regulatory agency permits deceptive and unconscionable trade practices, on
> [plaintiff's] argument, no conduct that violated the Arkansas Deceptive Trade
> Practices Act would ever fall within the exception provided in section 4-88-101(3),
> which would mean that that provision is meaningless.

847 F. Supp. 2d 1125, 1127 (E.D. Ark. 2012).

First, the Arkansas Department of Human Service regulates nursing homes through the

Office of Long Term Care, which licenses and inspects long-term care facilities and has the

authority to promulgate rules and regulations governing those facilities.  ARK. CODE ANN. § 20-10-

203.  Second, the United States Department of Human Services regulates nursing homes through its Centers for Medicare and Medicaid Services.  42 C.F.R. § 483.1-483.80.  The defendants therefore engaged in actions permitted by a regulatory body by operating a nursing home.  Tuohey's ADTPA claim fails as a matter of law.

## B.      Breach of Contract – Admission Agreement

Count II states a claim for breach of contract against the Center, but fails as a matter of law against the other defendants.  Document #35 at 42-43, ¶¶ 100-07.  "[I]n order to state a cause of action for breach of contract [under Arkansas law] the complaint need only assert the existence of a valid and enforceable contract between the plaintiff and the defendant, the obligation of the defendant thereunder, a violation by the defendant, and damages resulting to plaintiff from the breach."  *Ballard Grp., Inc. v. BP Lubricants USA, Inc.*, 2014 Ark. 276, 8, 436 S.W.3d 445, 450 (citing *Perry v. Baptist Health*, 358 Ark. 238, 244, 189 S.W.3d 54, 58 (2004)).  Tuohey alleges that the residents entered into contracts upon admission to the Center, Document #35 at 77, pursuant to which the Center was obligated to provide nursing and custodial care, necessary goods, routine meals, services, and treatment in exchange for payment.  Document #35 at 42, ¶ 101.  "When performance of a duty under a contract is contemplated, nonperformance of that duty is a breach." *Cozart v. Logue*, 2014 Ark. App. 626, 4, 447 S.W.3d 133, 136.  The amended complaint alleges that the Center breached this obligation by failing to provide residents the services promised due to chronic understaffing.  Document #35 at 23, 24, 42, ¶¶ 48, 51, 103.  The breach caused residents to suffer from discomfort, pain, and health problems.  Document #35 at 37, ¶¶ 81-82.  These factual allegations state a claim for breach of contract against the Center based on the admission agreement.

But the contractual duties created by the admission agreement may not be imposed on the other defendants, who are not parties to the agreement. "The presumption is that parties contract only for themselves . . ."[4] *Elsner v. Farmers Ins. Grp., Inc.*, 364 Ark. 393, 395, 220 S.W.3d 633, 635 (2005). Tuohey argues that because she has alleged the defendants operated as one business, they are all bound by the admission agreement. Document # 49 at 23. It is true that under Arkansas law, a participant in a joint venture may be liable for the actions of others in the joint venture. *Kolbek v. Twenty First Century Holiness Tabernacle Church, Inc.*, No. 10CV4123, 2014 WL 348592 at *2 (W.D. Ark. Jan. 31, 2014); PROSSER AND KEETON ON THE LAW OF TORTS § 72 at 516-17. This theory of liability arises out of agency law[5] and applies to hold participants in a joint venture vicariously liable for the *torts* of other participants. *See Nat'l Bank of Commerce (of El Dorado) v. HCA Health Serv. of Midwest, Inc.*, 304 Ark. 55, 58, 800 S.W.2d 694, 697 (1990). The joint venture theory is not applicable in contract to allow the enforcement of an agreement against a non-party.[6] The Center was the only defendant who was a party to the admission agreements with residents. *See Smith v. Heather Manor Care Ctr., Inc.*, 2012 Ark. App. 584, 12, 424 S.W.3d 368,

---

[4]A non-party who is an intended third-party beneficiary may enforce a contract against a party to the agreement, but here Tuohey, who is a party, seeks to enforce the contract against non-parties. *See Rabalaias v. Barnett*, 284 Ark. 527, 529, 683 S.W.2d 919, 921 (1985).

[5]While an agent may bind its principal to a contract under certain circumstances, nowhere does Tuohey allege that the Center was acting as an agent for the other defendants when it entered into contracts with residents. *See Nielsen v. Berger-Nielsen*, 347 Ark. 996, 1008, 69 S.W.3d 414, 421 (2002).

[6]Tuohey relies on *Advocat, Inc. v. Sauer* to support application of a joint venture theory in contract, but in that case the Arkansas Supreme Court considered that the defendants operated as one business in its decision to reduce negligence, medical malpractice, and punitive damages awards and held that the lower court was correct to instruct the jury that one defendant could be liable for the negligence of another defendant. 353 Ark. 29, 48-49, 65-66, 111 S.W.3d 346, 356-57, 367 (2003).

377 (holding that because certain defendants did not have contracts directly with the nursing home resident, the resident did not have a cause of action against them for breach of contract). Tuohey's claims for breach of contract against each defendant other than the Center fail as a matter of law.

## C.     Breach of Contract – Provider Agreement

Count III fails to state a claim because the provider agreement is not an enforceable contract. Document #35 at 43, ¶¶ 108-117. Tuohey alleges that "[u]pon becoming a resident of [the Center], the residents, many of whom were Medicare and/or Medicaid recipients, became third-party beneficiaries of the contract or provider agreement between the Defendants and the state and federal governments . . ." Document #35 at 43, ¶ 109. The Center entered into agreements with the state and federal governments whereby it was reimbursed for services provided to Medicare or Medicaid recipients. *Id*. at 43-44, ¶¶ 110-11. The provider agreement attached to the amended complaint is an agreement by the Center to participate in the Arkansas Nursing Home Program administered by Office of Long Term Care under Medicaid. Document #35 at 89. The Center agreed that it had the responsibility to comply with all rules issued by the United States Department of Health and Human Service pertaining to nursing homes. *Id*. Tuohey alleges that the Center breached the provider agreement by failing to provide the care, goods, and services consistent with federal and state statutes and regulations. *Id*. at 44-45, ¶ 112.

Whether a provider agreement is a contract subject to common law contract principles generally arises when a provider seeks to dispute a decision made or a requirement implemented by the Secretary of the Department of Health and Human Services. *See PAMC, LTD. v. Sebelius*, 747 F.3d 1214, 1221 (9th Cir. 2014); *Harper-Grace Hosp. v. Schweiker*, 708 F.2d 199, 201 (6th Cir. 1983); *Mem'l Hosp. V. Heckler*, 706 F.2d 1130, 1136 (11th Cir. 1983); *Southeast Ark. Hospice, Inc.*

*v. Sebelius*, 1 F. Supp.3d 915, 925 (E.D. Ark. 2014); *U.S. v. VillaSpring Health Care Ctr., Inc.*, No. 3:11-43-DCR, 2011 WL 6337455 at *8 (E.D. Kan. Dec. 19, 2011); *U.S. ex rel Roberts v. Aging Care Home Health, Inc.*, 474 F. Supp. 2d 810, 820 (W.D. La. 2007); *Greater Dallas Home Care Alliance v. United States*, 10 F. Supp. 2d 638, 647 (N.D. Tex. 1998).  This Court held that "[t]he weight of authority supports a finding that the provider agreement is not a contract." *Southeast Ark. Hospice, Inc.*, 1 F. Supp. 3d at 926.  Rather, "[u]pon joining the Medicare program . . . [the Center] received a statutory entitlement, not a contractual right." *Mem'l Hosp.*, 706 F.2d at 1136.  This statutory entitlement was contingent upon the Center's compliance with the responsibilities outlined in the provider agreement. *See* Document #35 at 90.  A failure to fulfill those responsibilities can result in sanctions or the termination of reimbursement payments. *Id.*  A failure to fulfill those responsibilities cannot, however, result in a claim by the benefits recipients for breach of contract because there is no enforceable contract between the provider and the government.  Therefore, Tuohey's claim for breach of contract based on the provider agreement fails as a matter of law.

**D.     Civil Conspiracy**

Count V fails to state a claim for civil conspiracy.  Tuohey alleges that the defendants conspired to understaff the facility in violation of state and federal laws.  Document #35 at 51, ¶ 133. "Civil conspiracy is an intentional tort requiring a specific intent to accomplish the contemplated wrong." *Dodson v. Allstate Co.*, 345 Ark. 430, 445, 47 S.W.3d 886, 876 (2001).  To state a claim for civil conspiracy, one must allege the existence of an agreement to accomplish a purpose "that is unlawful or oppressive or to accomplish some purpose, not in itself unlawful, oppressive, or immoral, by unlawful, oppressive or immoral means, to the injury of another." *Id.* (citing *Mason v. Funderburk*, 247 Ark. 521, 529, 446 S.W.2d 543, 548 (1969)).  Civil conspiracy is not a separate

tort; it must be based on the underlying tortious activity.  *Varner v. Peterson Farms*, 371 F.3d 1011, 1016 (8th Cir. 2004).

A plaintiff alleging a claim for civil conspiracy must state a prima facie case for the underlying tort in order to support a conspiracy claim.  *See* ARK. MODEL JURY INSTRUCTIONS 714-Civil (2015 ed.) (citing *Lane v. Chowning*, 610 F.2d 1385, 1390 (8th Cir. 1979) ("We have already determined that Lane has failed to establish either a factual or a legal basis for recovery on any of his several allegations.  It follows, then, that no overt act has been established which is a necessary element in establishing the existence of a civil conspiracy.")); *See also Ballard Group, Inc. v. BP Lubricants USA, Inc.*, 2014 Ark. 276, 18, 436 S.W.3d 445, 455 (reversing the dismissal of a civil conspiracy claim due to reversal of dismissal of the underlying claims of tortious interference and misappropriation of trade secrets); *Distrib. Co. v. Miller Brewing Co.*, 366 Ark. 560, 578, 237 S.W.3d 63, 76 (2006) (reversing summary judgment on civil conspiracy claim due to reversal of summary judgment on underlying claims for tortious interference and violation of two statutes).  Tuohey bases her civil conspiracy claim on the defendants' statutory violations and breaches of contract.  Document #49 at 30.  The Court has dismissed Tuohey's ADTPA claim, breach of contract claim based on the admission agreement against all defendants but the Center, and breach of contract claim based on the provider agreement.  Tuohey's claim for civil conspiracy fails because a civil conspiracy claim under Arkansas law cannot be based on a breach of contract.  *See Ondrisek v. Hoffman*, 698 F.3d 1020, 1026 (8th Cir. 2012); *Varner*, 371 F.3d at 1016.

E.     **Unjust Enrichment**

Count VI for unjust enrichment fails as a matter of law.  Tuohey alleges that the defendants received payments from residents or on behalf of residents for services they did not provide and

were not entitled to due to chronic understaffing at the Center.  Document #35 at 52-53, ¶¶ 137-140.

Unjust enrichment is an equitable doctrine based on the notion that a person should not become

unjustly enriched at the expense of another and should be required to make restitution for the unjust

enrichment received.  *See Campbell v. Asbury Auto., Inc.*, 2011 Ark. 157, 21, 381 S.W.3d 21, 36.

"[A]n action based on unjust enrichment is maintainable where a person has received money or its

equivalent under such circumstances that, in equity and good conscience, he or she ought not to

retain."  *Campbell*, 2011 Ark. 157 at 21, 381 S.W.3d at 36.  The measure of damages is the amount

of unfair gain received by those unjustly enriched.  *Id*.  Generally, unjust enrichment does not apply

when an express contract exists.  *Davis v. Davis*, 2016 Ark. App. 33, 11, __ S.W.3d __(citing

*Coleman's Serv. Ctr., Inc. v. F.D.I.C.*, 55 Ark. App. 275, 299, 935 S.W.2d 289, 302 (1996)).  This

rule also applies to defendants who are not a party to the express contract.  *Servewell Plumbing, LLC

v. Summit Contractors Inc.*, 362 Ark. 598, 612, 210 S.W.3d 101, 112 (2005).[7]  The Eighth Circuit

explained the general rule:

> The reason for the rule that someone with an express contract is not allowed to
> proceed on an unjust enrichment theory, is that such a person has no need of such a
> proceeding, and moreover, that such a person should not be allowed by means of
> such a proceeding to recover anything more or different from what the contract
> provides for.

*U.S. v. Applied Pharmacy Consultants, Inc.*, 182 F.3d 603, 609 (8th Cir. 2009).  However, pleading

unjust enrichment as an alternative to a breach-of-contract claim is allowed in certain circumstances

---

[7]"On appeal, Servewell argues that the rule barring recovery in quasi-contract where there is an express contract 'has no application to claims against third parties.'" *Servewell*, 362 Ark. at 612, 210 S.W.3d at 112.  While there does not appear to be any Arkansas case law on this precise issue, the Second Circuit Court of Appeals has held that it is a 'settled principle' that 'the existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi-contract for events arising out of the same subject matter.'" *Id*. (quoting *U.S. East Telecomm. Inc. v. U.S. West Commc'n. Serv., Inc.*, 38 F.3d 1289, 1296 (2d. Cir. 1994)).

under Arkansas law. *See, e.g.*, *Klein v. Arkoma Prod. Co.*, 73 F.3d 779, 786 (8th Cir. 1996); *Friends of Children, Inc. v. Marcus*, 46 Ark. App. 57, 61, 876 S.W.2d 603, 605-06 (1994); 1 HOWARD W. BRILL, *Arkansas Law of Damages* § 31:2 (5th ed. 2015). For example, when an express contract does not fully address a subject, a court may impose a remedy to further the ends of justice. *Klein*, 73 F.3d at 786; *Access Mediquip, LLC v. St. Vincent Infirmary Med. Ctr.*, No. 4:11CV00695, 2012 WL 4359055 at *6 (E.D. Ark. Sept. 21, 2012); *QHG of Springdale, Inc. v. Archer*, 2009 Ark. App. 692, 9, 373 S.W.3d 318, 324.

Tuohey concedes that an express contract, the admission agreement, exists but argues that unjust enrichment applies here because the express contract does not fully address the issues and claims asserted in the complaint. Document #49 at 32. Specifically, she contends the agreement does not fully address the subject of staffing and allegations that the Center violated state law and federal regulations through chronic understaffing. *Id*. "Where the parties have an enforceable contract that fully addresses a subject, they must proceed on that contract in resolving their differences. But where the contract fails on some basis, or does not fully address a subject, or disputed performance is compelled under protest, then the parties' contract is no bar to an unjust enrichment claim for restitution." *QHG of Springdale, Inc. v. Archer*, 2009 Ark. App. 692, 11, 373 S.W.3d 318, 325 (quoting *Applied*, 182 F.3d at 609).

In *QHG of Springdale, Inc. v. Archer*, the Arkansas Court of Appeals reversed a directed verdict in favor of a hospital on an unjust enrichment claim brought by a doctor. 2009 Ark. App. at 14, 373 S.W.3d at 326. The doctor had an employment contract with the hospital, pursuant to which he was obligated to provide on-call coverage on a rotating basis. *Id*. at 3, 373 S.W.3d at 321. The court determined that the meaning of having call on a "rotating basis" was an open question that

had to be answered by a jury on the doctor's unjust enrichment claim. *Id*. The evidence presented at trial showed that the doctor was on call all of the time because the hospital failed to implement a rotating schedule. *Id*. at 4, 373 S.W.3d at 322. The court found that the doctor had "overperformed" the contract because he abided by the hospital's "unrelenting call schedule" for good reasons–strong public policy requiring doctors to take care of their patients who need medical care by responding in a reasonable period of time–and under protest. *Id*. at 13, 373 S.W.3d at 326. The circumstances obligated the hospital to pay the doctor something more where the contract "required [the doctor] to be on call, but gave no particulars other than requiring some rotation. This indefiniteness created hurdles for a claim on the contract. The precise terms of performance due from both parties on rotating call were disputed." *Id*. (internal citations omitted). Therefore, the express contract between the parties did not preclude a claim for unjust enrichment.

The Eighth Circuit applied Arkansas law in *Jackson v. Allstate Ins. Co.* to hold that the plaintiff's insurance policy with Allstate fully addressed the subject matter at issue. 785 F.3d 1193, 1201 (8th Cir. 2015). The plaintiff sued Allstate because it denied her homeowner's insurance policy claim when a fire destroyed her home. *Id*. at 1196. The plaintiff did not dispute that her insurance policy with Allstate was an enforceable written contract but argued that it did not fully address the subject matter of the case. *Id*. at 1201. She continued to pay her mortgage for one year following the loss, even though Allstate had a duty under her insurance policy to pay the mortgage. *Id*. The policy, however, did not address her right to recover the mortgage payments. *Id*. The Eighth Circuit held that "because [the plaintiff] had an ongoing obligation to pay her own mortgage, her post-fire mortgage payments were recoverable damages arising from Allstate's alleged breach of contract." *Id*.

Here, the amended complaint essentially alleges that the Center was unjustly enriched because it failed to provide the services promised in the admission agreement. Document #35 at 52-53, ¶¶ 137-140. The doctor in *QHG* performed above and beyond what was required by his employment contract. 2009 Ark. App. at 13, 373 S.W.3d at 326. But the residents simply held up their end of the bargain–they made payments to the Center or payments were made to the Center on their behalf. The theory of Tuohey's case is that the Center was so chronically understaffed, the residents did not receive the care and services the Center was obligated to provide. Document #35 at 2, ¶1. By receiving payments for care and service that it did not provide, Tuohey alleges the Center was unjustly enriched. *Id*. at 52, ¶138. The Center is obligated under the admission agreement to provide nursing and custodial care, necessary goods, routine meals, services, and treatment in exchange for payment. *Id*. at 42, ¶ 101. Staffing levels are not addressed in the admission agreement but they are significant because they directly affect the quality, consistency, and frequency of care the patients receive and the chronic understaffing of the facility caused a failure to provide the care required by the admission agreement. Therefore, while the admission agreement does not explicitly state the number of CNA's the Center is required to have on-duty, it fully addresses the subject of resident care. Any payments the Center received and retained are recoverable damages arising from its alleged breach of contract; the amended complaint fails to state a claim for unjust enrichment. *See Jackson*, 785 F.3d at 1201.

## CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART. Document #42. The amended complaint states a claim against the Center in Count II for breach of contract based on the admission agreement. Count II fails to state a claim

against the remaining defendants and is dismissed without prejudice.  Counts I, III, V, and VI fail

to state a claim and are dismissed without prejudice.  Because the Court is dismissing Count I,

Diamond Senior Living, LLC's separate partial motion to dismiss is moot.  Document #58.

IT IS SO ORDERED this 25th day of March, 2016.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE