**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

BRENDA TUOHEY, as Personal Representative					PLAINTIFFS
of the Estate of Mildred May Bryant and on behalf of the
wrongful death beneficiaries of Mildred Mae Bryant,
and all others similarly situated

v.					No. 4:15CV00506 JLH

CHENAL HEALTHCARE, LLC, d/b/a Chenal
Rehabilitation and Healthcare Center, *et al*.					DEFENDANTS

**OPINION AND ORDER**

This is a wrongful death action brought by Brenda Tuohey on behalf of the Estate of Mildred May Bryant and Bryant's wrongful death beneficiaries against thirty-one defendants alleging that the Chenal Rehabilitation and Healthcare Center was chronically understaffed in violation of the admission agreement and that the failure to staff Chenal Healthcare adequately constituted negligence. Three motions for summary judgment are pending.

The defendants are a web of corporate entities and individual administrators affiliated in some way with the Chenal Rehabilitation and Healthcare Center, which is a seventy-bed nursing home in Little Rock. The amended complaint alleges that the corporate entities developed the business policies that resulted in the alleged understaffing of Chenal Healthcare, while the individual administrators and directors of nursing acted in conjunction with the corporate entities to reduce staffing levels or maintain staffing at an inadequate level. Tuohey's mother, Mildred Mae Bryant, was a resident of Chenal Healthcare from approximately June 25, 2007, to December 17, 2014. Tuohey claims that Bryant's stay at Chenal Healthcare accelerated the deterioration of her health, resulting in multiple urinary tract infections, poor hygiene, a broken tibia, a broken fibula, unsanitary living conditions, and ultimately her death.

**I.**

A court should grant summary judgment if the evidence demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine dispute for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If the moving party meets that burden, the nonmoving party must come forward with specific facts that establish a genuine dispute of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). A genuine dispute of material fact exists only if the evidence is sufficient to allow a reasonable jury to return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). The Court must view the evidence in the light most favorable to the nonmoving party and must give that party the benefit of all reasonable inferences that can be drawn from the record. *Pedersen v. Bio-Med. Applications of Minn.*, 775 F.3d 1049, 1053 (8th Cir. 2015). If the nonmoving party fails to present evidence sufficient to establish an essential element of a claim on which that party bears the burden of proof, then the moving party is entitled to judgment as a matter of law. *Id*.

**II.**

**A.  The Medical Malpractice Act**

In the first pending motion for summary judgment, the defendants'[1] initial argument is that all of Tuohey's claims fall within the ambit of the Arkansas Medical Malpractice Act—Ark. Code

---

[1] "Defendants" includes all defendants except Diamond Senior Living, LLC, which is separately represented and filed its own motion for summary judgment. Document #92.

Ann. § 16-114-201, *et. seq*. Document #89. According to the defendants, all of Tuohey's claims arise from "medical injuries," so she may only seek relief for those injuries under the malpractice act. Because she failed to do so prior to the deadline for amending her complaint, the defendants ask the Court to dismiss her claims. In the alternative, they ask the Court to whittle her claims down to one claim for medical malpractice. The motion is characterized as one for summary judgment, but the defendants' statement of undisputed facts includes four paragraphs, three summarizing Tuohey's complaint. Document #91. The motion as it pertains to the malpractice act is in substance a motion for judgment on the pleadings pursuant to Rule 12(c).

Rule 12 (c) provides: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Such a motion is evaluated in the same manner as a 12(b)(6) motion to dismiss. *McIvor v. Credit Control Serv., Inc.*, 773 F.3d 909, 912 (8th Cir. 2012). To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the complaint must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). The Court accepts as true all of the factual allegations contained in the complaint and draws all reasonable inferences in favor of the nonmoving party. *Gorog v. Best Buy Co., Inc.*, 760 F.3d 787, 792 (8th Cir. 2014). The complaint must contain more than labels, conclusions, or a formulaic recitation of the elements of a cause of action, which means that the court is "not bound to accept as true a legal conclusion couched as a factual allegation."

3

*Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965.

Tuohey concedes that the amended complaint includes a claim for medical injury governed by the malpractice act. Conversely, the defendants never argue that the amended complaint fails to allege facts that would constitute a claim under the malpractice act. *See* Document #101 at 4; Document #89. Rather, they argue that the facts alleged would state a claim under the malpractice act, and only under the malpractice act, but since Tuohey never cites that act in her complaint her claims should be dismissed. Tuohey's failure to characterize her claims as arising under the malpractice act does not require the Court to dismiss those claims. Instead, the Court can look to the true character of the tort alleged. *Cont. Cas. Co. v. Moser*, No. 4:05CV00979 JLH, 2006 WL 827319, at *5 (E.D. Ark. March 29, 2006) (citing *Cherepski v. Walker*, 323 Ark. 43, 55, 913 S.W.2d 761, 767 (1996)). The failure to cite the Medical Malpractice Act in the complaint does not preclude application of the Act. *See Looney v. Bolt*, 330 Ark. 530, 536, 955 S.W.2d 509, 512 (1997) (claim pled under the Wrongful Death Act). Where the alleged acts or omissions of a medical provider result in a medical injury, the Act applies regardless of how the claims have been pled. *Id.* It follows that a plaintiff may state a plausible claim by supporting it with sufficient factual allegations without explicitly labeling that claim.

The amended complaint states three claims: (1) a medical negligence claim; (2) an ordinary negligence claim; and (3) a claim for breach of the admission agreement against Chenal Rehabilitation and Healthcare. The defendants argue that the amendments to the malpractice act adopted in 2013 by the Arkansas General Assembly as Act 1196 preclude Tuohey from recovering for injuries other than for medical injuries. Although the statute was amended to insure that a person who suffers a medical injury cannot be compensated for that injury more than once, the statutory definition of "medical injury" was not substantially changed. *See* 2013 Arkansas Act 1196. A

4

medical injury continues to be an adverse consequence that arises out of or is sustained in the course of professional services being rendered by a medical care provider. *Id.*; *see also* Ark. Code Ann. § 16-114-201 (2016 Repl.). The Arkansas Supreme Court has drawn the line separating claims for medical injury from other claims in numerous cases that predate Act 1196 of 2013. *See*, *e.g.*, *Paulino v. QHG of Springdale, Inc.*, 2012 Ark. 55, 9-10, 386 S.W.3d 462 (2012); *Young v. Gastro-Intestinal Ctr., Inc.*, 361 Ark. 209, 221, 205 S.W.3d 741, 750 (2005); *McQuay v. Guntharp*, 336 Ark. 534, 986 S.W.2d 850, 853 (1999); *Howard v. Ozark Guidance Ctr.*, 326 Ark. 224, 228, 930 S.W.3d 341, 343 (1996); *Spring Creek Living Ctr. v. Sarrett*, 319 Ark. 259, 263, 890 S.W.2d 598, 600 (1995); *Wyatt v. St. Paul Fire & Marine Ins. Co.*, 315 Ark. 547, 552-555, 868 S.W.2d 505, 508-10 (1994); *Ruffins v. ER Ark., P.A.*, 313 Ark. 175, 177, 853 S.W.2d 877, 879 (1993); *Bailey v. Rose Care Ctr.*, 307 Ark. 14, 18, 817 S.W.2d 412, 414 (1991); *Sexton v. St. Paul Fire & Marine Co.*, 275 Ark. 361, 363, 631 S.W.2d 270, 272 (1982). Because Act 1196 of 2013 did not substantially change the definition of "medical injury" in the malpractice act, these cases remain authoritative. The distinction between claims for medical injury and other types of claims remains a real distinction. Depending on what evidence is presented at trial, the Court will instruct the jury accordingly at the proper time.[2]

**B.  Punitive Damages**

Next, the defendants argue that Tuohey cannot present evidence to show the existence of a genuine dispute as to whether she is entitled to punitive damages. Document #90 at 7. Punitive

---

[2] Tuohey will not be allowed to recover twice for the same injury simply by pursuing more than one theory of relief. *Cf. Albright v. So. Farm Bur. Life Ins. Co.*, 327 Ark. 715, 719, 940 S.W.2d 488, 490 (1997) ("We have no doubt that, although a plaintiff may not recover for the same act in both contract and tort and must ultimately choose among remedies sought, it is not wrong for concurrent remedies to be pursued.").

damages are not recoverable for the breach of the admission agreement claim. *L.L. Cole & Son, Inc. v. Hickman*, 282 Ark. 6, 8-9, 665 S.W.2d 278, 281-82 (1984). Punitive damages can be awarded for torts in nursing home litigation and medical malpractice actions. *See* 1 Howard W. Brill & Christian H. Brill, Ark. Law of Damages § 9:2 (6th ed. 2015) (footnotes omitted). In *Rose Care, Inc. v. Ross*, the Arkansas Court of Appeals provided that to support an award of punitive damages, there must be "evidence that a party likely knew, or ought to have known, in light of the surrounding circumstances, that his conduct would naturally or probably result in injury and that he continued such conduct in reckless disregard of the consequences from which malice could be inferred." 91 Ark. App. 187, 210, 209 S.W.3d 393, 407 (2005) (citing *Union Pac. R.R. Co. v. Barber*, 356 Ark. 268, 149 S.W.3d 325 (2004)).

In response to the defendants' motion for summary judgment, Tuohey submitted the unsworn expert report of Dr. Loren G. Lipson as evidence that an inference of malice may be drawn from the defendants' reckless disregard of numerous and recurrent deficiencies cited by state and federal regulators. Document #101-1. The Eighth Circuit has explained:

> Rule 56(c)(4) requires "[a]n affidavit or declaration used to support or oppose a motion [to] be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Although Rule 56, as amended in 2010, no longer requires a formal affidavit, an unsworn declaration or statement substituted for a sworn affidavit must still meet important statutory requirements. *See* Fed. R. Civ. P. 56(c) advisory committee's note to 2010 amendment. Under 28 U.S.C. § 1746, an unsworn declaration or statement must be written, signed, dated, and certified as true and correct "under penalty of perjury."

*Banks v. Deere*, 829 F.3d 661, 668 (8th Cir. 2016). Thus, "an unsworn expert report, standing alone, does not constitute admissible evidence that can be considered at the summary judgment stage of the proceedings, and will not defeat a motion for summary judgment . . . ." *Maytag Corp. v. Electrolux Home Prods., Inc.*, 448 F. Supp. 2d 1034, 1065 (N.D. Iowa 2006). *See also Peak v. Cent.*

6

*Tank Coatings*, 606 Fed. Appx. 891, 895 (10th Cir. 2015); *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 480-81 (6th Cir. 2008); *Provident Life & Acc. Ins. Co. v. Goel*, 274 F.3d 984, 1000 (5th Cir. 2001); Fed. R. Civ. P. 56(e).  It may be possible to "cure" unsworn materials by a subsequent affidavit.  *DG&G, Inc. v. Flexsol Pkg. Corp.*, 576 F.3d 820, 826 (8th Cir. 2009); *Maytag Corp.*, 448 F. Supp. 2d at 1064.  Here, the defendants noted in their brief filed on April 17, 2017, that Lipson's unsworn expert report was inadmissible.  Document #103 at 6-7.  Tuohey has not attempted to "cure" Lipson's unsworn statement, so it will not be considered.

Tuohey also points to paragraph 53 of her complaint, which lists examples of regulatory citations.  Document #101 at 15.  As the non-moving party bearing the burden of proof on the issue of punitive damages, Tuohey "may not rest on allegations in the pleadings, but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists."  *Lower Brule Sioux Tribe v. State of S.D.*, 104 F.3d 1017, 1021 (8th Cir. 1997).  Tuohey has failed to present admissible evidence to show that a genuine dispute of material facts exists.  The defendants are entitled to summary judgment on the issue of punitive damages.

**III.**

In its motion for summary judgment, Diamond Senior Living, LLC, which owned the building leased to Chenal Healthcare, argues that it owed no legal duty to Bryant and that even if it owed a duty, it did not proximately cause her injuries.  Document #92.  Diamond Senior Living's motion relies on the affidavit of its Vice President, Karen Austin, who testifies to the lease between Diamond Senior Living and Chenal Healthcare.  Austin explains that the two entities have no other connection and that Diamond Senior Living had no involvement in Bryant's care.

7

In the third pending motion for summary judgment, the "non-facility defendants"[3] also argue that they were not involved in Bryant's care, owed no duty to her, and did not proximately cause her injuries. Document #95. The non-facility defendants present no evidence. Instead, they argue that Tuohey cannot present evidence on these essential elements of her claim against them, so they are entitled to summary judgment on that basis.

**A.  Rule 56(d)**

Tuohey has provided little evidence in response to the defendants' motions for summary judgment. Counsel for Tuohey submitted Rule 56(d) affidavits requesting the Court either deny or defer ruling on the motions for judgment, so that Tuohey can depose Karen Austin in connection with Diamond Senior Living's motion for summary judgment and depose various officers and employees of the non-facility defendants in connection with their motion for summary judgment. Document #104-1 at 2, ¶7; Document #109-1 at 2-3, ¶¶4-6. Rule 56(d) provides: "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). "The purpose of this rule is to prevent a party from being unfairly thrown out of court by a premature motion for summary judgment." *Jackson v. Riebold*, 815 F.3d 1114, 11121 (8th Cir. 2016) (internal quotation omitted). The Court has "wide discretion" to deny a Rule 56(d) request. *See Anzaldua v. Ne. Ambulance and Fire Prot. Dist.*, 793 F.3d 822, 837 (8th Cir. 2015).

Tuohey maintains that, to her knowledge, Diamond Senior Living did not disclose Austin as an individual with personal knowledge of its lack of involvement or control in the operation of

---

[3] The non-facility defendants are all the defendants, other than Chenal Healthcare and Diamond Senior Living, which is represented separately.

Chenal Healthcare. Document #104 at 2, ¶4. Nevertheless, Tuohey has failed to show with specificity what she hopes to learn from further discovery. Tuohey does not say what she expects to learn from questioning her about that affidavit other than to say that she wishes to explore the extent of Austin's personal knowledge—which is insufficient to meet the requirements of Rule 56(d). *Anzaldua*, 793 F.3d at 837. Tuohey must state specific facts she hopes to learn from additional discovery, that the facts sought exist, and that the those facts are essential to rebut the summary judgment motion. *Jackson*, 815 F.3d at 1121. She has not done so.

Tuohey has had fourteen months to conduct discovery on the issues addressed in Austin's affidavit. Even if she was unaware of Austin, the issues regarding which Austin testifies in her affidavit cannot come as a surprise: it had to be apparent from the get-go that Tuohey would need to present proof on the issue of Diamond Senior Living's relationship with Chenal Healthcare and its involvement with Bryant's care.

Tuohey also says that she has requested that the non-facility defendants produce for depositions "several officers and employees, who oversaw, supervised, directed or otherwise controlled budgeting, staffing, hiring and terminations, nursing, and policies and procedures, as well as involvement and control of other issues directly impacting care of the residents at Chenal Healthcare, including Mildred Bryant." Document #109-1 at 2, ¶4. According to Tuohey, "[t]he parties have worked cooperatively to continue discovery in preparation for trial" and she anticipates the depositions will be completed prior to trial, which is set for June 5. *Id.* at 3, ¶6.

This Court entered a final scheduling order on December 29, 2015, setting a trial date of June 5, 2017, as well as a discovery deadline of March 23, 2017. That order stated, "[t]he Court will not grant a continuance because a party does not have time in which to depose a witness, expert or otherwise." Document #44. Again, Tuohey had ample time to conduct discovery. She knew from

9

the get-go that she would need to present proof on her claim that the non-facility defendants owed a duty to Bryant, that they breached the duty, and that their breach proximately caused injury to Bryant. She gives no explanation as to why that discovery has not been conducted.

Tuohey also says that the defendants agreed to produce certain documents that they have yet to produce. Document #109-1 at 3, ¶8. Local Rule 7.4 provides that "[t]he court will not recognize any agreement between counsel, if counsel differ as to its terms, unless the agreement has been reduced to writing." Tuohey has not presented a written agreement in support of her contention that the parties had an agreement. Tuohey could have filed a motion to compel the defendants to produce the documents prior to the discovery deadline and, if properly supported, the Court would certainly have granted it; but she did not. Instead, she has waited until the defendants filed a motion for summary judgment to assert that these documents should have been produced. It is too late.

The defendants' motions for summary judgment are not premature. Tuohey has had ample time—fourteen months—to conduct discovery, and trial is less than one month away. Document #44. Tuohey's Rule 56(d) requests are denied.

**B.      Liability of the Defendants Other Than Chenal Healthcare**

"Negligence is defined as the failure to do something that a reasonably careful person would do, or the doing of something that a reasonably careful person would not do, under the circumstances." *New Maumelle Harbor v. Rochelle*, 338 Ark. 43, 46, 991 S.W.2d 552, 553 (1999). To prevail on the defendants' motions for summary judgment, Tuohey therefore must show that she sustained damages, that the defendants were negligent—they owed a duty of care to Bryant and they breached that duty—and that the defendants' negligence proximately caused Bryant's injuries. *See Carnell v. Elder Outreach of Little Rock*, 2012 Ark. App. 698, 5, 425 S.W.3d 787, 791.

Whether a duty arises from the relationship between two parties is a matter of law. *See*

10

*Yanmar Co., Ltd. v. Slater*, 2012 Ark. 36, 16, 386 S.W.3d 439, 449. "Duty is a concept that arises out of the recognition that relations between individuals may impose upon one a legal obligation for the other." *Bedell v. Williams*, 2012 Ark. 75, 6, 386 S.W.3d 493, 499. Whether a defendant's actions proximately caused a plaintiff's injuries is usually a question of fact for a jury, but where reasonable minds cannot differ, it is a question for the court. *Neal v. Sparks Reg. Med. Ctr.*, 2012 Ark. 328, 7, 422 S.W.3d 116, 121. "Proximate cause is defined as that which in a natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred." *Giles v. Sparkman Residential Care Home, Inc.*, 68 Ark. App. 263, 267, 6 S.W.3d 140, 142-43 (1999).

Arkansas courts on several occasions have considered whether entities that provided services to nursing homes and individuals who served as administrators of nursing homes were personally liable to residents. Those cases look to whether the entity or individual was personally involved in the events that led to the resident's injury or personally participated in the resident's care. *See Bedell*, 2012 Ark. at 6, 386 S.W.3d at 499; *Bayird v. Floyd*, 2009 Ark. 455, 10, 344 S.W.3d 80, 86; *Smith v. Heather Manor Care Ctr., Inc.*, 2012 Ark. App. 584, 13, 424 S.W.3d 368, 377; *Watkins v. Ark. Elder Outreach*, 2012 Ark. App. 301, 14, 420 S.W.3d 477, 486; *Scott v. Cent. Ark. Nursing Ctrs.*, 101 Ark. App. 424, 434-35, 278 S.W.3d 587, 595 (Ark. App. 2008). Absent some involvement in the events that led to the resident's injury or personal participation in the resident's care, Arkansas courts have held that the defendant owed no duty to the resident, or that even if the defendant owed some type of duty to the resident, the defendant's conduct was not the proximate cause of the resident's injuries.

1. **Diamond Senior Living**

Diamond Senior Living owned and leased the building in which Chenal Healthcare was

housed. Document #94-1 at 1, ¶3. Diamond Senior Living has submitted the affidavit of its Vice President, Karen Austin, who stated that the only relationship Diamond Senior Living had with Chenal Healthcare was a lessor-lessee relationship, and that Diamond Senior Living was not involved in any way in the operation of Chenal Healthcare. *See* Document #94-1. In response, Tuohey has failed to provide evidence that Diamond Senior Living was involved in either the provision of care at Chenal Healthcare during the time that Bryant's condition began to deteriorate or that it made any decisions concerning staffing at Chenal Healthcare. Tuohey relies on the lease agreement to establish a duty as to Diamond Senior Living. Document #106 at 5. She points to a handful lease provisions as grounds for holding Diamond Senior Living responsibilities to that injuries Bryant sustained at the Center. The lease provisions are evidence of nothing more than a standard lessor-lessee relationship. *See* Document 105 at 4-6, ¶¶7-15. Because Tuohey has failed to provide evidence that Diamond Senior Living had some involvement with the level of staffing at Chenal Healthcare or the care provided to Bryant, she is unable to present evidence on essential elements of her claim: duty, breach of duty, and proximate cause. Therefore, Diamond Senior Living is entitled to summary judgment.

### 2. Nursing Home Administrators

The following individuals are sued in their capacities as nursing home administrators: Ralph Johnson, Dana Thompson-Barker, Jill R. Madden, and Marilyn Files. Nursing home administrators owe a duty to a resident "if they were personally involved in the events surrounding an injury." *Carnell*, 2012 Ark. App. at 5-6, 425 S.W.3d at 791. The only administrator Tuohey mentions in her response to the defendants' motion for summary judgment is Ralph Johnson. *See* Document #110 at 12. Tuohey has submitted no evidence regarding the other administrators and their role at Chenal Healthcare, so those administrators are entitled to summary judgment.

In *Watkins v. Ark. Elder Outreach of Little Rock, Inc.*, the personal representative of a deceased nursing home resident sued the nursing home, other entities affiliated with the nursing home, and the nursing home administrator. 2012 Ark. App. at 1, 420 S.W.3d at 479. The primary question before the court on appeal involved charitable immunity, but the court also considered whether the nursing home administrator could be liable to the resident for negligence. *Id.* at 13, 420 S.W.3d at 485-86. The personal representative argued that the trial court erred in holding that the administrator could not have owed a duty to the resident because he was not required to provide direct care to her. *Id.* The administrator stated in his affidavit that he performed oversight and administrative functions for the nursing home; that he supervised the day-to-day business operations of the facility, worked to ensure regulatory compliance; was responsible "for all administrative functions required for the facility to function efficiently"; was not responsible for approving the budget and that no funds or resources required to operate the facility were ever withheld; and stated that he had not participated in anyway with decisions relating to the specific care or treatment of any individual resident. *Id.* at 6, 420 S.W.3d at 481-82. The court declined to decide whether the administrator owed a duty to the resident because the personal representative failed to establish breach of duty and proximate cause. *Id.*

Johnson's role was similar to that of the administrator in *Watkins*. Tuohey relies on a deposition Johnson gave on October 2, 2014 in another case unrelated to this case and a deposition he gave in a similar case[4] on January 11, 2017 to establish that he was personally involved in the events surrounding Bryant's injury. Document #110 at 12-14. His testimony mostly concerns his knowledge about the relationship between the Center and non-facility defendants CMC II, and

---

[4] The parties agreed that the deposition would be for Tuohey's case, in addition to two other cases. Document #109-5 at 11.

LaVie. Document #110 at 13-14 Specifically, Tuohey says that Johnson, along with everyone else who worked at the Center, was an employee of "CMC," the parent company of the Center. *Id*. at 12 (citing Document #109-3 at 37). Johnson agreed in his deposition that it was his responsibility as administrator of the Center to provide the "highest degree of quality care for the resident patient while achieving the facility's business objectives." Document #109-5 at 64. He ensured compliance with state and federal regulations, and oversaw the coordination of day-to-day patient care. Document #109-3 at 127. But Johnson said that he was not medically trained, that did not provide medical care, and that he was not responsible for approving the budget. *Id.* at 31, 107; Document #109-5 at 69, 98-99. And there is no evidence that Johnson made any decisions regarding the level of staffing at the Center. Tuohey's argument focuses on Johnson's affiliation with CMC, but that affiliation and his status as nursing home administrator at the time of Bryant's injuries does not make him liable for those injuries under a theory of negligence. Document #109-5 at 49, 61. Tuohey has not shown how Johnson breached a duty of care and proximately caused Bryant's injuries; therefore, Johnson is entitled to summary judgment.

### 3. Directors of Nursing

The following individuals are sued in their capacities as directors of nursing: Roseann Dawson Owens, Synthia Denise Monroe, Bonnie Wyoma Hayes, and Denita Ann Takasaki**.** The only director of nursing Tuohey mentions in her response to the defendants' motion for summary judgment is Roseann Dawson Owens. Therefore, the other directors of nursing are entitled to summary judgment.

Tuohey submitted a deposition Owens gave in another unrelated case, the same unrelated case in which Johnson gave a deposition. Document #109-4. Owens was the director of nursing at the time Bryant resided at the Center. Document #110 at 15. She testified that she was an employee

14

of CMC and that she attended training at CMC's corporate office in Florida. Document #109-4 at 24-26. The training included procedures regarding the medical care and treatment of residents. *Id*.

Owens testified that she was not responsible for "daily patient per day labor hours," but that she and Johnson received reports each day concerning the previous days' hours. *Id*. at 103. From what the Court can gather from Owens's deposition testimony, the level of staffing required to care for the residents is a computer-generated number, based on various factors. *Id*. Owens owed a legal duty to Bryant arising out of her responsibilities to Bryant as director of nursing. The Court need not determine the scope of that duty, however, because Tuohey has failed to submit evidence of breach and proximate cause. Tuohey has not pointed to any action Owens took that breached the duty of care and proximately caused Bryant's injuries; therefore, Owens is entitled to summary judgment.

### 4. Corporate Entities

The following corporate entities are non-facility defendants in this case:

- LaVie Care Centers LLC;
- CMC II LLC;
- Centennial Healthcare Corporation;
- Centennial Healthcare Management Corporation;
- Centennial Healthcare Investment Corporation;
- Shoreline Healthcare Management LLC;
- Coastal Administrative Services LLC;
- Centennial Healthcare Holding Company LLC;
- Centennial Healthcare Properties LLC;
- Centennial Newco Holding Company LLC;
- ALG LaVie LLC;
- FC Investors XXI LLC;
- LV Investors LLC;
- LV Operations I LLC;
- LV Operations II;
- Hilltopper Holding Corp.;
- MCP LaVie LLC;
- Say La Vie LLC;
- Senior Care La Vie LLC; and

- Centennial Master Tenant LLC

The only corporate entities Tuohey mentions in her response to the defendants' motion for judgment are CMC II LLC[5] and LaVie Care Centers LLC. Because she has failed to produce evidence of that other corporate entities were involved in the staffing levels at Chenal Healthcare or with Bryant's injuries, they are entitled to summary judgment.

The Arkansas Court of Appeals addressed a claim for negligence against entities affiliated with a nursing home in *Scott v. Cent. Ark. Nursing Ctrs.* The personal representative of a deceased nursing home resident sued the nursing home; Central Arkansas Nursing Centers, Inc. ("CANC"); Nursing Consultants, Inc. ("NCI"); and Michael Morton, the sole-shareholder of CANC and NCI, for negligence. 101 Ark. App. at 426, 278 S.W.3d at 589. She alleged that understaffing, improper hygiene, skin care, and nutrition care, proximately caused the resident's injuries and death. *Id*. at 427, 278 S.W.3d at 590. The trial court directed verdicts in favor of CANC and NCI. *Id*. On appeal, the court affirmed the directed verdict against CANC but reversed and remanded the directed verdict in favor of NCI. CANC provided administrative services to the nursing home for which it received three and one-half percent of its gross revenues and NCI provided consulting services to the nursing home in exchange for a fee. *Id*. The difference between the two entities' relationships with the resident was the level of involvement the entities had in the events surrounding the resident's injury and the resident's care. *See id.* at 436-37, 278 S.W.3d at 595, 597. CANC contracted with the nursing home to provide it billing and accounting services. *Id*. at 434-35, 278 S.W.3d at 595. The personal representative put on no evidence that CANC had any responsibility

---

[5] Tuohey refers to "CMC," rather than "CMC II LLC." *See* Document #110 at 12. She also refers to a "Consulate Healthcare" and a "Consulate Management Company." *Id*. at 12. She explains that Johnson "views Consulate, Consulate Management Company and Consulate as "one entity, parent company" so the Court will as well. *Id*. at 13.

for the number of staff on duty at the nursing home during the resident's time there. *Id*. The court reasoned:

> It is true that CANC was contractually bound to cooperate with and assist NCI in scheduling quarterly risk-management training. But only sheer conjecture could equate the logistical obligation with a duty to provide clinical training to the [nursing home] staff in matters such as skin care, nutrition, and hydration.

*Id*. The court held that there was no evidence to show that CANC was negligent, despite evidence of its affiliation with the nursing home, NCI, and Michael Morton. *Id*.

Evidence showed that NCI, on the other hand, was negligent. *Id*. at 437, 278 S.W.3d at 597. The court found: "It is plain from the proof that NCI was directly involved in the provision of care at [the nursing home] during the time that [the resident's] condition began to deteriorate." *Id*. An NCI employee reviewed nursing home records and made recommendations concerning residents' care. *Id*. That employee also testified at trial that she would typically inquire with the Director of Nurses at a facility whether a lack of staffing might be responsible for services not being delivered to a resident. *Id*. at 431-32, 278 S.W.3d at 593. The court held that there was substantial evidence of negligence and that a jury could reasonably conclude that NCI's conduct proximately caused the resident's injuries, so that a directed verdict was improper. *Id*. at 437, 278 S.W.3d at 597.

A resident of a different nursing home sued NCI several years later in *Smith v. Heather Manor Care Ctr., Inc*., but in that case the evidence showed that NCI was merely "available for consultation and training regarding various issues." 2012 Ark. App. at 15, 424 S.W.3d at 378. The court, discussed its holding in *Scott* and the evidence demonstrating NCI's direct involvement with the resident's care in that case: "This evidence included testimony that the nursing home was deemed one of the worst facilities in the state; that there were state surveys showing the need to improve staffing; that NCI was involved in trying to improve staffing; that an employee of NCI

served briefly as director of nursing; and that NCI made recommendations concerning residents." *Id.* at 14-15, 424 S.W.3d at 378. The court compared the evidence in *Scott* to the evidence before it in *Smith*: "In the present case, there is no such comparable testimony. The evidence the administrators rely upon shows that NCI is available for consultation and to provide training regarding various issues. The administrators do not explain how this consultation and training by NCI establishes that NCI was negligent or otherwise contributed to the injuries suffered by [the resident]." *Id.*

According to Tuohey, like the personal representative in *Scott*, CMC II LLC and LaVie Care Centers LLC were directly involved in the provision of care at Chenal Healthcare during the time that Bryant's condition began to deteriorate because they provided consulting services to the administrator and director of nursing at the Center. Document #110 at 16. Tuohey says this about CMC: It is the parent company of the Center and its affiliated entities; it employed everyone who worked at the Center, including Johnson and Owens; Johnson has been deposed as the corporate representative of CMC II LLC; it was a part of a management agreement with the Center by which it provided Johnson and Owens with certain resources, including consulting services and staffing services like hiring, firing, and background checks; it approved the Center's operational budget; representatives from CMC II LLC visited the Center; Owens visited CMC II LLC's office to attend training regarding wound care, nutrition, and care planning; and CMC II LLC provides regional directors of clinical services who serve as support personnel for directors of nursing "from time to time." Document #109-3 at 31,101, 120-22; Document #109-4 at 25, 39; Document #109-5 at 39-40. Tuohey says this about LaVie Care Centers LLC: It merged with CMC II LLC. Document #110 at 12.

Tuohey has provided evidence that CMC II and LaVie Care Centers were directly involved

in the provision of care at the time Bryant resided at the Center. Owens testified that CMC II LLC provided "clinical support" to her, as the director of nursing, and received data to ensure that the Center was following corporate and regulatory guidelines. Document #109-4 at 39. Owens also testified that if concerns about the care of a particular resident could not be addressed locally, she would contact "regional" employees of CMC II. *Id*. at 51. Tuohey has not shown that Owens was required to do so to address any issues with Bryant's care, but the court in *Scott* found that making recommendations concerning residents was evidence of direct involvement. 101 Ark. App. at 437, 278 S.W.3d at 597. However, while CMC II and LaVie Care Centers may have owed a duty to Bryant due to their direct involvement in the care of residents, Tuohey has failed to submit any evidence to show that the duty was breached. No evidence has been presented to show that CMC II and LaVie Care Centers took any action or failed to take any action that caused injury to Bryant. Therefore, CMC II and LaVie Care Centers are entitled to summary judgment.

## CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART. Document #89. Diamond Senior Living, LLC's motion for summary judgment is GRANTED. Document #92. The non-facility defendants' motion for summary judgment is GRANTED. Document #95. The claims against all of the defendants except Chenal Rehabilitation and Healthcare Center are dismissed with prejudice.

IT IS SO ORDERED this 17th day of May, 2017.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE